Date Signed:
April 16, 2014



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>GINO FORDIANI,<br><br>    Debtor. | Case No. 13-00094<br>Chapter 7<br><br>Re: Docket No. 52 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON OBJECTION TO CLAIM OF CHERI GALLO

This dispute involves claims by co-owners of real property for contribution for their expenditures and efforts in acquiring, renovating, and maintaining the common property.

Cheri Gallo filed proof of claim no. 4, asserting a general unsecured claim in the amount of $673,535.64. The debtor, Gino Fordiani, objected to the claim. The court held an evidentiary hearing on the objection on March 3, 7, and 31, 2014. Kris A. LaGuire represented Mr. Fordiani and Barbara L. Franklin represented Ms. Gallo.

Based on the evidence, the court makes the following

# FINDINGS OF FACT

1. In the late 1990's, Mr. Fordiani and Ms. Gallo began an intimate relationship. In or around 2001, Mr. Fordiani moved into Ms. Gallo's residence in Laguna Beach, California. Ms. Gallo was the sole owner of the Laguna Beach residence after she received it in a divorce. They lived together in the Laguna Beach residence (except for a few months of separation) until she sold it in 2006.

2. Mr. Fordiani claims that he contributed to the value of the Laguna Beach residence by making improvements and preparing it for sale. Ms. Gallo denies this contention. The evidence does not sustain his contention that he added quantifiable value to the property for which he should be compensated.

3. From 2005 through 2010, Mr. Fordiani and Ms. Gallo signed and filed joint tax returns as husband and wife, even though they never married. The joint filing for 2005 allowed Ms. Gallo to reduce the tax burden of the sale of the Laguna Beach property by doubling the capital gains exclusion under section 121 of the Internal Revenue Code. This did not harm Mr. Fordiani because he could not have used the exclusion in any other way and he can use the exclusion if he purchases and sells a residence in the future.

4. Mr. Fordiani owned a condominium in Aliso Viejo, California. Ms. Gallo claims that, when Mr. Fordiani sold the condominium, she acted as the real estate agent but received no compensation. Mr. Fordiani denies this contention.

U.S. Bankruptcy Court - Hawaii   #13-00094   Dkt # 188   Filed  04/16/14   Page 2 of 12

The evidence does not sustain her entitlement to any quantifiable compensation for these services.

5. In the early 2000's, Mr. Fordiani and Ms. Gallo began to talk about moving to Hawaii and building their dream home. In 2005, while visiting Mr. Fordiani's parents on Maui, they found a property they liked that was located at 54-2299 Kynnersley Road, North Kohala, Hawaii.

6. Before they made an offer for the Kynnersley Road property, Mr. Fordiani and Ms. Gallo discussed their budget extensively to make sure they could afford it. They agreed that they would share equally the mortgage payments and other expenses of owning, maintaining, and renovating the property.

7. Mr. Fordiani testified that he and Ms. Gallo regarded the property as a joint endeavor with equal ownership, that they would each contribute their assets and effort to the property, and that they would always be equal owners regardless of whether they made equal contributions to the property. I do not believe this testimony. Mr. Gallo's description of the agreement–that both parties agreed to equal ownership *and* equal contributions–is more plausible.

8. The parties agreed that Mr. Fordiani would "run his expenses" through companies which he controlled, Shoreline Plumbing Inc. and Shoreline Plumbing Enterprises, Inc. (the latter of which was dissolved at some point).

9. Mr. Fordiani and Ms. Gallo bought the Kynnersley Road property for

3

U.S. Bankruptcy Court - Hawaii   #13-00094   Dkt # 188   Filed  04/16/14   Page 3 of 12

$1,690,000.00. Ms. Gallo contributed $764,820 (from the sale proceeds of her Laguna Beach home) and Mr. Fordiani contributed $330,000 for the down payment and closing costs. They obtained a $600,000 first mortgage loan from Countrywide Financial for which they were jointly and severally liable. They took title as tenants in common. The deed does not specify their ownership shares but the parties agree that their shares are equal.

10. Mr. Fordiani and Ms. Gallo moved into the Kynnersley Road property in 2006 and began work on it a few months later. They renovated the main dwelling and added an ohana unit, garage, and barn according to agreed-upon plans. They both worked hard on the project for several years. The improvements are well done and attractive.

11. Mr. Fordiani and Ms. Gallo agreed to do the work without obtaining building permits in advance as the law requires. They did so because they did not want to delay the work until the permits were issued. They intended to obtain building permits after the fact, but they have never obtained permits.

12. In 2010, Mr. Fordiani and Ms. Gallo agreed to take a new mortgage loan from Hawaii Community Federal Credit Union ("HCFCU"). The amount of the loan was sufficient to refinance the Countrywide loan, create a reserve account of about $50,000 to cover the payments on the HCFCU loan for a time, and provide $75,000 each to Mr. Fordiani and Ms. Gallo.

4

13. The following table lists the amounts the parties spent to acquire, renovate, and maintain the Kynnersley Road property. Each of these expenditures were necessary for those purposes and benefitted the common property.

| Description | Gallo | Fordiani |
|---|---|---|
| Down Payment | $764,820.00 | $330,000.00 |
| Mortgage payments | $299,332.81 | $7,425.82 |
| Property taxes | $29,921.20 | $829.65 |
| Homeowners insurance | $10,904.10 | $373.50 |
| Security system & service | $3,261.58 | $112.12 |
| Renovation costs | $660,310.07 | $115,127.00 |
| Refinancing expense | $800.00 | |
| Pest control | $520.84 | |
| Legal bill re purchase | $533.30 | |
| **Total** | **$1,770,403.90** | **$453,868.09** |

14. The amounts which the parties paid for automobiles (loan payments, insurance, and maintenance), utilities (gas, electricity, telephone, television, and internet), health insurance, medical care, travel, and similar items were not necessary for the acquisition, renovation or maintenance of the property.

15. Some of the expenses claimed by Ms. Gallo may have been partly attributable to the acquisition, renovation, or maintenance of the property. For example, Ms. Gallo testified that the storage unit held both materials for the construction project and their personal items. A portion of the water bills may have

5

been necessary to preserve the landscaping, but another portion must have been attributable to washing, cooking, and the like, purposes which were not necessary for the acquisition, renovation, or maintenance of the property. Similarly, some of the fuel and electricity costs were probably attributable to the renovation project, but others were not. The evidence does not permit me to allocate these items between property-related and personal expenses with reasonable certainty.

16. Mr. Fordiani has failed adequately to substantiate most of his claims for reimbursement.

    a. Mr. Fordiani's exhibits include numerous credit card statements, bills, and accounting summaries purporting to show amounts which his company, Shoreline Plumbing, paid for the renovation work. In many cases, the documents do not indicate the purpose of the expenditures or confirm that the expenditures were for the Kynnersley Road property rather than Shoreline Plumbing's other business.

    b. Although the exhibits are less than clear on this point, he apparently claims reimbursement for periodic partial payments toward credit card balances, although most of the charges making up those balances are not related to the Kynnersley Road property.

    c. Included in Mr. Fordiani's claims are expenses for the acquisition and transportation of two or more travel trailers and a vacation spot in

6

U.S. Bankruptcy Court - Hawaii   #13-00094   Dkt # 188   Filed   04/16/14   Page 6 of 12

Mexico. These expenses have nothing to do with the Kynnersley Road property and Ms. Gallo never agreed to pay any part of them.

   d. Mr. Fordiani claims a right to reimbursement for his repayment of loans which Ms. Gallo made to him or his company.[1] This claim is absurd.

   e. He claims reimbursement for the portion of the HCFCU refinancing loan which the parties agreed would be disbursed to Ms. Gallo,[2] even though he received exactly the same amount of the loan proceeds. This claim is also absurd.

   f. The most reliable evidence of Mr. Fordiani's expenditures is exhibit "O," an accounting report which shows the expenses allocated to the Kynnersley Road project on Shoreline Plumbing's books.

  17. Mr. Fordiani did a substantial amount of physical work on the improvements. Mr. Fordiani failed, however, to establish the dollar value of that work with reasonable certainty. The only pertinent evidence is his testimony that the value of the property after the improvements was greater than the sum of the purchase price and the out-of-pocket cost of the improvements. His testimony on value is admissible because he is a co-owner of the property, but it has little weight because he is not a qualified expert on real property values in Hawaii. Further, his

---

[1] *See, e.g.,* the entries labeled Cheri Gallo on exs. 113 and 201.

[2] The entry labeled Gallo/Loan Dispersment [sic] on ex. 233.

7

U.S. Bankruptcy Court - Hawaii   #13-00094   Dkt # 188   Filed  04/16/14   Page 7 of 12

testimony is insufficient to establish the value of his work because the value of the property may have risen due to general market conditions, wholly apart from his services.

18. Mr. Fordiani never had a contractors' license in Hawaii. (He has only a California contractors' license.)

19. Mr. Fordiani seeks reimbursement for the cost of purchasing tools and gas powered equipment which were used on the renovation work. Because Mr. Fordiani (or one of his companies) still owns these items, and there is no evidence that these items were used up or destroyed on this project, the correct measure of his possible claim would be the fair rental value of those items. There is no evidence of the fair rental or use value of those items.

20. Ms. Gallo repeatedly asked Mr. Fordiani to pay his share of their property-related expenses but he did not comply.

21. The relationship between Mr. Fordiani and Ms. Gallo deteriorated and eventually collapsed. In late 2012, Mr. Fordiani moved out of the Kynnersley Road property and Ms. Gallo obtained a state court order precluding him from returning.

22. Ms. Gallo sued Mr. Fordiani in state court on a loan she had made to him in 2009. She did not make any of the claims that she asserted in proof of claim no. 4. The state court entered judgment in her favor in late 2012 in the amount of $137,236.55. (The claim based on the judgment is the subject of a

8

U.S. Bankruptcy Court - Hawaii    #13-00094    Dkt # 188    Filed 04/16/14    Page 8 of 12

separate proof of claim, to which no one has objected.)

Based on the foregoing findings of fact, the court draws the following

## CONCLUSIONS OF LAW

1. The bankruptcy court has constitutional and statutory power to enter final judgment in this matter.

2. A proof of claim is deemed allowed unless a party in interest objects to it.[3] In order to prevail, the objecting party must "come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'"[4] If the objecting party does so, the burden of proof (by a preponderance of the evidence) shifts back to the claimant. "The ultimate burden of persuasion remains at all times upon the claimant."[5]

3. Mr. Fordiani and Ms. Gallo paid their respective shares of the down payment out of their separate funds. Mr. Fordiani has no claim to the funds which Ms. Gallo used for that purpose, and vice versa.

4. A cotenant who pays more than his or her share (in proportion to

---

[3] 11 U.S.C. § 502(a).

[4] *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991)).

[5]*Id.*

9

U.S. Bankruptcy Court - Hawaii   #13-00094   Dkt # 188   Filed 04/16/14   Page 9 of 12

ownership interests) of common obligations or expenses of the property is generally entitled to contribution from the other cotenants.[6] This rule can apply to mortgage payments, taxes, insurance, repairs, and the like.

5. Cotenants may alter their contribution rights by agreement.[7] Ms. Gallo and Mr. Fordiani have never waived their respective contribution rights.

6. In the absence of an agreement, a cotenant is not entitled to require the other cotenants to pay compensation for services rendered for the benefit of the common property.[8]

7. Courts usually address the right of contribution in partition suits. But the right of contribution is not limited to that context.[9] The right to contribution is substantive, and a person's substantive legal rights should be the same regardless of the procedural context in which they arise.

8. Mr. Fordiani is not entitled to recover for his services on the

---

[6]*Whirrett v. Mott*, 77 Ohio App. 3d 177, 179-80, 601 N.E.2d 525, 527-28 (Ohio Ct. App. 1991) *Aiello v. Aiello*, 268 Md. 513, 518-19, 302 A.2d 189, 192 (Md. 1973); *S. Adjustment Bureau, Inc. v. Nelson*, 230 Cal. App. 2d 539, 541, 41 Cal. Rptr. 148 (Cal. Ct. App. 1964); *Steeve v. Yaeger*, 145 Cal. App. 2d 455, 464, 302 P.2d 704 (Cal. Ct. App. 1956); *Shenson v. Shenson*, 124 Cal. App. 2d 747, 754-55, 269 P.2d 170 (1954) (citation omitted); *Willmon v. Koyer*, 168 Cal. 369, 374-75, 143 P. 694 (Cal. 1914); 20 Am. Jur. 2d Cotenancy and Joint Ownership § 66 (2014) (footnotes omitted). Hawaii's Intermediate Court of Appeals has recognized the cotenant's right of contribution. *Curtis v. Dorn*, 123 Haw. 301, 303, 234 P.3d 683, 685 (Haw. Ct. App. 2010).

[7]20 Am. Jur. 2d Cotenancy and Joint Ownership § 66 (2014) (footnotes omitted).

[8]*Whirrett v. Mott*, 77 Ohio App. 3d 177, 179-80, 601 N.E.2d 525, 527-28 (Ohio Ct. App. 1991); *Combs v. Ritter*, 100 Cal. App. 2d 315, 317, 223 P.2d 505 (Cal. Ct. App. 1950).

[9]*Aiello v. Aiello*, 268 Md. 513, 518-19, 302 A.2d 189, 192 (Md. 1973).

U.S. Bankruptcy Court - Hawaii   #13-00094   Dkt # 188   Filed 04/16/14   Page 10 of 12

renovation project for the following independently sufficient reasons:

      a.     A cotenant is not entitled to contribution for such services in the absence of an agreement, and there was no such agreement.

      b.     The evidence does not establish the value of such services with reasonable certainty.

      c.     An unlicensed person, such as Mr. Fordiani, is not entitled to recover for work for which a license is required.[10] Mr. Fordiani's work required a license, and none of the exceptions to the licensing requirement applies.[11]

9.     The total amount which the parties spent to acquire, renovate, and maintain the Kynnersley Road property was $2,224,271.99. Each of the co-owners should have paid half of this amount, or $1,112,135.00. Instead, Ms. Gallo paid $1,770.403.90, which is $658,267.90 more than her share. She is entitled to recover that amount from her cotenant, Mr. Fordiani.

10.    Neither party is entitled to recover from the other any expenses other than those related to the acquisition, renovation, or maintenance of the Kynnersley Road property. The parties had no enforceable agreement to share those other expenses and neither party offers any authority for the proposition that, under

---

[10] Haw. Rev. Stat. § 444-22 (West 2013).

[11] *Id.* § 444-2. The "owner-builder" exemption, *id.* § 444-2.5, does not apply because the parties did not obtain building permits and register the project in accordance with section 444-9.1.

11

Hawaii law and in the absence of an agreement, an unmarried cohabitant has a right to contribution or reimbursement if he or she pays more than his or her share of the couple's living and personal expenses.

## DISPOSITION

A separate judgment shall enter allowing claim no. 4 as a general unsecured claim in the amount of $658,267.90.

## END OF DECISION

U.S. Bankruptcy Court - Hawaii   #13-00094   Dkt # 188   Filed 04/16/14   Page 12 of 12